UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United American Healthcare Corporation,

     Plaintiff,

v.                                   Case No.: 13-13570

Demian Backs and Vince Barletta,        Honorable Sean F. Cox

     Defendants.
_____/

**OPINION AND ORDER**

This case involves a contract dispute. Plaintiff United American Healthcare Corporation ("United") alleges that Defendants Demian Backs ("Backs") and Vince Barletta ("Barletta") (collectively, "Defendants") breached the parties' Stock Purchase Agreement ("SPA") by misappropriating the proprietary information of, and directly competing with, United's wholly-owned subsidiary and Defendants' former employer, Pulse Systems LLC ("Pulse").

This matter is before the Court on Defendants' Combined Motion to Compel Arbitration, Or Transfer Venue, Or Stay Proceedings (Doc. #7). Plaintiff opposes Defendants' motion, and the motion has been fully briefed by the parties. This Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* Local Rule 7.1(f)(1), U.S.D.C., E.D. MI. This Court orders that the motion will be decided upon the briefs. For the reasons set forth below, this Court DENIES Defendants' motion in its entirety.

## BACKGROUND

Plaintiff United American Healthcare Corporation is a Michigan corporation[1] with its principal place of business in Chicago, Illinois.  It is unclear exactly what type of business that United conducts, but the parties agree that United now owns 100% of the stock in Pulse Systems, LLC.  Pulse is located in California.

Defendant Demian Backs was an employee of Pulse from September 2003 until June 2013.  Defendant Vince Barletta was the former President and CEO of Pulse until August 28, 2007.  Backs entered into a "Confidential Information and Invention Assignment Agreement" with Pulse.  (Def.'s Mo. at Ex. 2(A)).  This contract contains a confidentiality clause, a nonsolicitation clause, a noncompetition clause, and an arbitration agreement.  (Def.'s Mo. at Ex. 2(A)).

Barletta entered into an Employment Agreement with Pulse that contains, *inter alia*, covenants concerning confidentiality of proprietary information owned by Pulse, noncompetition with Pulse after the end of employment, and nonsolicitation of Pulse employees after the end of employment.  This agreement also contains an arbitration clause.  *See generally*, Employee Agreement, attached to Defs.' Mo. at Ex. 1(A).

In 2010, according to Plaintiff, Defendants appointed John Fife to represent them in a sale of their Pulse shares of stock to United.  These negotiations, which allegedly took place at United's office in Detroit, Michigan, culminated in Plaintiff and Defendants' negotiation and execution of a Stock Purchase Agreement ("SPA").  (*See* SPA, attached to Compl. at Ex. A).  The Stock Purchase Agreement contained confidentiality, noncompetition and nonsolicitation clauses similar to those

---

[1]Apparently, in late 2013, United's shareholders voted to change its state of incorporation from Michigan to Nevada.  It is unclear whether that change has actually taken place yet.

found in the Employment Agreements.  The SPA does not contain an arbitration agreement, but does contain jurisdiction and choice-of-law provisions.

In 2013, after Defendants left the employ of Pulse, they formed a company called Aduro. Plaintiff alleges that Aduro was formed for the sole purpose of directly competing with Pulse. Plaintiff also alleges that during their last years at Pulse, Defendants had "unfettered access" to Pulse's proprietary information and data, and that Defendants gathered and later misappropriated that information for the benefit of their new company.  Plaintiff also alleges that once Aduro was formed, Defendants solicited Pulse employees and Pulse customers.

### a)      The California State Court Litigation

On or around July 29, 2013, Pulse filed suit against Defendants Backs and Barletta, as well as other individuals, in California state court.  Pulse alleges that defendants misappropriated Pulse's confidential proprietary information in order to set up the Aduro business and compete with Pulse. The California complaint contains nine causes of action against all defendants:

1)      Misappropriation of Trade Secrets;

2)      Intentional Interference with Contractual Relations;

3)      Intentional Interference with Prospective Economic Advantage;

4)      Negligent Interference with Prospective Economic Advantage;

5)      Trespass to Chattels;

6)      Conversion;

7)      Unfair Competition;

8)      Unjust Enrichment/Restitution;

9)      An Accounting.

3

(Defs.' Br. at Ex. 3(A)).  On September 3, 2013, defendants in the California action moved to compel arbitration, and Pulse agreed to arbitration on October 11, 2013.  (Pl.'s Resp. at 3).

    **b)**    **The Stock Purchase Agreement**

The SPA existing between Plaintiff and Defendants contains a few covenants relevant to the case at bar, including a covenant entitled "Confidentiality; Covenant Not to Compete; Covenant Not to Solicit," whereby each Defendant promised to "treat and hold as confidential all of the proprietary information of [Pulse Systems, LLC] and the Business . . . and refrain from using any of the confidential information . . . ."  (SPA section 6.3(a), attached to Pl.'s Compl. at Ex. A, p.36).  The parties further agreed that

> For a period of five (5) years following the Closing Date, no Seller nor any of its Affiliates will, directly or indirectly, knowingly solicit or hire any employee or consultant of [Pulse Systems, LLC] for any employment or consulting arrangement or otherwise interfere with such individual's relationship with [Pulse Systems, LLC] or its Affiliates without the buyer's prior written consent, or induce or attempt to induce any current or former customer, supplier or other business relation of [Pulse Systems, LLC] or its Affiliates into any business relationship which might harm the business.

(SPA section 6.3(b), attached to Pl.'s Compl. at Ex. A, p. 36-37).

The Stock Purchase Agreement also contains a Forum Selection Clause, which states that:

> Each of the Parties submits to the jurisdiction of any state or federal court sitting in the State of Michigan in any proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the proceeding may be heard and determined in any such court and hereby expressly submits to the personal jurisdiction and venue of such court for the purposes hereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum . . . .

(SPA section 9.19).

    **c)**    **The Federal Complaint**

Plaintiff, in its Complaint, alleges that Defendants' positions at Pulse Systems allowed them

4

"unfettered access" to all of Pulse's confidential information.   (Pl.'s Compl. at ¶ 19).   Plaintiff alleges that Defendant Backs collected confidential technical and proprietary information while he was employed at Pulse using his personal e-mail accounts and online cloud storage solutions.  (Pl.'s Compl. at ¶ 23).

The gravamen of Plaintiff's complaint against these Defendants is that they "unjustifiably and inexcusably breached their obligations under the SPA by, among other things: (i) using confidential and proprietary information to create a directly competing business; (ii) soliciting Pulse LLC's employees and consultants for employment; and (iii) soliciting Pulse LLC's customers." (Pl.'s Compl. at ¶ 35).  Plaintiff has pleaded one breach of contract claim against Defendants based on their alleged breach of the SPA.

## ANALYSIS

Defendants have moved this Court to do one of three things: compel arbitration, transfer venue to the United States District Court for the Northern District of California, or grant a stay of proceedings pending the outcome of the California state court litigation.   Plaintiff opposes Defendants' motion.

### 1)   Should This Court Compel Plaintiff To Arbitrate Its Claims Against Defendants, Pursuant to Defendants' Employment Agreements With Pulse?

Defendants argue that this Court should require Plaintiff to arbitrate its claim pursuant to the Employment Agreements existing between Defendants and Pulse Systems, LLC.  Defendants argue that the allegations contained in Plaintiff's Complaint, if true, constitute a breach of their Employment Agreements with Pulse, and that the federal litigation therefore "arises out of" the Employment Agreements.  (Pl.'s Mo. at 11).  Based on that conclusion, Defendants argue that the arbitration clause in the Employee Agreement requires these parties to arbitrate.

5

Plaintiff maintains that its Complaint is based on Defendants' breach of the SPA, that Plaintiff never agreed to arbitrate any dispute with Defendants involving breach of the SPA, and that it is not bound by any arbitration agreement existing between Defendants and Pulse Systems, LLC.

An arbitration agreement is, quite simply, a contract. *See Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962). Generally, a party cannot be forced to arbitrate any dispute unless he or she has expressly agreed to do so. *Fitzgerald v. HRB Mgmt. Inc.*, 2006 WL 1984173 (E.D. Mich. July 13, 2006), *opinion clarified*, 2007 WL 657618 (E.D. Mich. Feb. 26, 2007), *citing AT&T Technologies v. Comm. Workers of America*, 475 U.S. 643, 648 (1985). "Thus, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Id.*, *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Here, it cannot be disputed that Plaintiff is a nonsignatory to the employment agreements, and therefore has not expressly agreed to arbitrate any disputes it has involving Defendants.

There are, however, circumstances in which a third party nonsignatory will be forced to arbitrate his or her claims, despite a lack of express assent to an arbitration agreement. *See Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003). There are "[f]ive theories for binding nonsignatories to arbitration agreements [that have been] recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id., citing Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).

Here, Defendants have made no attempt to establish that any of these exceptions operate to bind Plaintiff to an arbitration agreement contained in an employment contract to which Plaintiff was a nonsignatory. Moreover, the one case Defendants cite in support of their position, *J.J. Ryan*

& Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988), is distinguishable.

In *Rhone*, plaintiff had exclusive distribution contracts with several affiliated companies. *Id.* at 316. The distribution contracts contained an arbitration agreement. Defendant Rhone, the parent company of all of the affiliated companies, wanted its affiliates to distribute Rhone's products as well. Plaintiff sued both Rhone and the affiliated companies, alleging that Rhone, the parent company, had acted in concert with its affiliates to terminate the exclusive distribution contracts. *Id.* at 320.

Defendant Rhone was willing to arbitrate even though it had no arbitration agreement with Plaintiff. Plaintiff did not want to arbitrate its claims against Rhone. *Id.* at 320. The Fourth Circuit held that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Id.* at 320-21 (internal citations and quotation marks omitted). The Court explained that any arbitration proceedings would be rendered meaningless if the subsidiaries, but not the parent corporation, were required to arbitrate. *Id.*

This case is distinguishable from *Rhone* because there, the signatory to the arbitration agreement resisted arbitration with a third party whereas the nonsignatory had agreed to arbitrate. In the present case, Defendants, who are parties to an arbitration agreement, seek to force the nonsignatory Plaintiff into arbitration. *See Fitzgerald*, 2006 WL 1984173 at *6 (distinguishing *Rhone* on the same grounds and finding that plaintiff could not compel nonsignatory defendant to arbitrate). Thus, *Rhone* does not support Defendants' position.

Defendants have not come forth with a legitimate reason for this Court to compel Plaintiff

into arbitration.  Because Defendants have not provided a convincing argument as to why Plaintiff should be forced to arbitrate pursuant to an agreement it did not assent to, this Court DENIES Defendants' Combined Motion to Compel Arbitration.

**2)      Should This Court Enforce The Forum Selection Clause Designating Michigan As The Parties' Chosen Forum?**

The SPA contains a forum selection clause as well as jurisdiction and choice-of-law provisions.  Collectively, these agreements state that any suit based on the SPA may be brought in Michigan, that the parties will submit to personal jurisdiction in Michigan, and that the parties waive any challenge to improper or inconvenient venue in Michigan.  (SPA section 9.19).

Defendants claim that the forum selection clause should not be enforced because it does not satisfy the requirements for enforcing a forum selection clause under Michigan law.  *See* Defs.' Br. at 15, *quoting* M.C.L. § 600.745(2).  However, as Plaintiff points out, the Sixth Circuit has ruled that "the enforceability of the forum selection clause is governed by *federal law*" in a diversity suit such as this case.  *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (emphasis added). This Court will apply Sixth Circuit law to determine the enforceability of the forum selection clause at issue.

The Sixth Circuit has set forth the following factors to guide this Court's analysis of whether it should enforce a forum selection clause: "1) whether the clause was obtained by fraud, duress, or other unconscionable means; 2) whether the designated forum would ineffectively or unfairly handle the suit; and 3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust."  *Wong*, 589 F.3d at 828, *citing Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999).  Under the third prong, opposition must "be based on more than mere inconvenience of the party seeking to avoid the clause."  *Id.*  "The party

8

who opposes the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.*, *citing Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

### a)        Was The Forum Selection Clause Obtained Under Fraud or Duress?

For the first time in their Supplemental Brief, Defendants attempt to argue that the forum selection clause is invalid because it was obtained by fraud and duress.  (Defs.' Supp. Br. at 6). Defendants claim that United, Pulse, and John Fife essentially coerced them into hastily signing the SPA without a meaningful opportunity to seek outside legal counsel.  Plaintiffs argue that this Court should not consider this argument because it is outside the intended scope of the supplemental briefs and was not presented in Defendants' opening or reply briefs.

This Court agrees.  Having not raised it in the first instance, Defendants have deprived Plaintiff of an opportunity to adequately respond to Defendants' claim.  Therefore, this Court declines to consider Defendants' argument that the forum selection clause was begotten under fraudulent circumstances.

### b)        Have Defendants Shown Michigan To Be A "Seriously Inconvenient" Forum?

Next, Defendants argue in their Reply Brief that the forum selection clause should not be enforced because Michigan is a "seriously inconvenient" forum in that Defendants have never been to Michigan, the sale of stock allegedly occurred in California, "all documents and witnesses" are in California, and Plaintiff is no longer headquartered in Michigan.  (Defs.' Reply Br. at 3-4).

Again, the timing of Defendants' argument is problematic as Plaintiff was not given an opportunity to respond.  Even so, this Court finds this argument without merit. With respect to the third factor, "[the party opposing the forum selection clause] must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable." *Wong*,

9

589 F.3d at 829.  This is a heavy burden that is not met by showing mere inconvenience.  *Id.*  Yet, this Court finds that "mere inconvenience" is all that Defendants have alleged.  Further, their grounds for inconvenience appear to be more properly addressed in the context of a motion to transfer venue (*see infra,* section 2B).

Additionally, this Court has previously enforced a forum selection clause against individual California defendants, even though the defendants' witnesses and documents were located in California and the defendants did not have any contacts with the state of Michigan beyond doing business with a Michigan corporation, because "[the parties] expected and intended the case to be litigated in Michigan, and that Michigan law would apply."  *Flagstar Bank, FSB v. Mortgage Loan Specialists*, 2010 WL 3862746 at *12 (E.D. Mich. Sep. 28, 2010) (Cox, J.).

Based on the foregoing, this Court holds that the forum selection clause is enforceable.

**3)     Should This Court Transfer Venue To The Northern District of California Pursuant To 28 U.S.C. Section 1404(a)?**

Defendants argue that if this Court finds the forum selection clause enforceable, it should nevertheless transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.

Plaintiff opposes Defendants' motion for venue transfer, arguing that the parties already agreed that Michigan would be a convenient venue to litigate their disputes by way of the forum selection clause and that Defendants cannot now argue that Michigan is an inconvenient venue. (Pl.'s Resp. At 14-16).  Plaintiff also argues that contractual noncompete clauses are disfavored under California law and that "United, a Michigan corporation, should not have to submit this case to a court that is unfamiliar with Michigan law."  (Pl.'s Resp. at 16).

Section 1404(a) states: "[f]or the convenience of the parties and witnesses, in the interests

of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When a defendant moves for venue transfer pursuant to 28 U.S.C. section 1404(a), the existence of a forum selection clause between the parties is not dispositive. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Nevertheless, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Id.*, *citing Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 591 (1991). "Where a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight." *Flagstar Bank, FSB v. Gulfstream Business Bank, Inc.*, 2013 WL 6017977 at *3 (E.D. Mich. Nov. 13, 2013) (Roberts, J.), *citing Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F.Supp. 214, 218 (E.D. Mich. 1992).

    **a)**    ***Atlantic Marine***

The United States Supreme Court has recently clarified the analysis this Court should undertake in evaluating a section 1404 motion when a valid forum selection clause exists between the parties. *See Atlantic Marine Const. Co. v. U.S. Dist. Ct. For the W.D. Tex.*, 134 S.Ct. 568 (2013).[2] In *Atlantic Marine*, the defendant sought to enforce a forum selection clause against a plaintiff who filed suit in Texas when the forum selection clause required the parties to litigate in Virginia. *Id.* at 575. Defendant moved to dismiss the case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or to transfer venue pursuant to 28 U.S.C. section 1406(a). *Id.* The district court denied both motions and the court of appeals denied defendant's petition for a writ

---

[2]On January 10, 2014, the Court entered a stipulated order permitting each of the parties to submit ten (10) pages of supplemental briefing discussing the applicability of the December 3, 2013 *Atlantic Marine* opinion to this case, and discussing the relevance of United's shareholder vote to change the state of incorporation from Michigan to Nevada. (Doc. #14). Each party was also permitted to file a five (5) page reply.

of mandamus.  *Id.* at 576.

The United States Supreme Court reversed the lower court, holding, *inter alia*, that a forum selection clause does not render a different venue "wrong" or "improper" within the meaning of section 1406(a) or Rule 12(b)(3), and that a party seeking to enforce a valid forum selection clause may do so by filing a motion under section 1404(a).  *Id.* at 579.  The Supreme Court went on to explain that, when considering a section 1404 motion, "[t]he presence of a valid forum selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways."  *Id.* at 581.

First, "the plaintiff's choice of forum merits no weight" because the forum selection clause represents plaintiff's preemptive exercise of "venue privilege."  *Atlantic Marine*, 134 S.Ct. at 581-2.

Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests."  *Id.* at 582.

Third, "when a party bound by a forum selection clause flouts its contractual obligation . . . a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ."  *Id.*

Importantly, the Supreme Court stated that "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves of their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Id.*  The Supreme Court noted the simple policy behind these rules: "[w]hen the parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."  *Id.* at 583.  Therefore, "in all but the most unusual cases . . . 'the interest of justice' is served by holding the parties to their bargain."  *Id.*

12

b)      **Application of *Atlantic Marine* To This Case**

It is clear that the *Atlantic Marine* opinion is not directly on point because there, the defendant wanted to transfer the case *to* the venue agreed upon in the parties' forum selection clause; here, by contrast, Defendants want to transfer the case *from* the venue agreed upon in the parties' forum selection clause.

Despite this difference, some of the reasoning of *Atlantic Marine* applies to the present case. After *Atlantic Marine*, when a valid and enforceable forum selection clause exists between the parties and one party moves to transfer venue pursuant to section 1404(a), the court should not weigh private factors such as convenience of the parties and their friendly witnesses; those considerations automatically weigh in favor of the preselected forum.  Rather, only public factors should be considered.  *Atlantic Marine*, 134 S.Ct. at 583.

Defendants attempt to argue that the guidance provided by *Atlantic Marine* does not apply here because this case involves a permissive forum selection clause whereas the forum selection clause at issue in *Atlantic Marine* was mandatory.  (*See* SPA section 9.19: "Each of the Parties submits to the jurisdiction of any state or federal court sitting in the State of Michigan in any proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the proceeding *may be heard* and determined in any such court . . . ." (emphasis added)).  However, Defendants have cited no authority showing that this distinction is even relevant in this jurisdiction, nor any authority showing that such a distinction would change this Court's analysis of a section 1404 issue.  Therefore, this Court finds that *Atlantic Marine* will inform this Court's analysis of Defendants' current motion.

c)      **Analysis of Defendants' Motion to Transfer Venue**

13

This Court will follow the logic of *Atlantic Marine* and disregard the convenience of Defendants or Defendants' friendly witnesses in determining whether to transfer venue. (Pl.'s Supp. Br. at 2-3). Not only did the parties agree that Michigan would be a convenient venue, but Defendants also expressly waived their right to challenge the convenience of Michigan as a venue for this litigation. (SPA section 9.19). The private factors, therefore, automatically fall in favor of keeping the case in Michigan.

Having dispensed with the private factors as disfavoring a venue transfer, this Court will only transfer this case to a California federal court if the public factors fall strongly in favor of a transfer. *Atlantic Marine*, 134 S.Ct. at 583.

> The public factors bearing on the question [of whether to transfer venue] [include] the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

Defendants rely quite heavily on the existence of the California state court litigation as a reason why it would be "inefficient" for this Court to adjudicate Plaintiff's claims. Defendants maintain that "if this action is to remain in the federal courts, it should be in the same district in which United initially elected to seek relief—California." (Defs.' Br. at 19).

Although Plaintiff does not lodge any formal response to Defendants' argument, this Court finds it without merit. Defendants continue to treat United and Pulse as identical entities without providing any legal reason for them to be so treated. Further, Defendants' make the vague contention that allowing California state court litigation and Michigan federal court litigation to exist

14

simultaneously would result in "inefficiency for the courts," but that argument is likely just another attempt at reiterating their own personal inconveniences resulting from their involvement in multi-forum litigation.

Defendants also point out, in their supplemental brief, that United's shareholders have recently voted to change the state of United's incorporation from Michigan to Nevada. (Defs.' Supp. Br. (Doc. #16) at p. 8-9; *see also* Defs.' Supp. Br. at Ex. 3)). United was originally incorporated under the laws of Michigan. "Consequently," Defendants argue, "there is no tie to Michigan and Michigan has no interest in the outcome of this case." (Defs.' Supp. Br. at 9).

Plaintiff responds that the shareholder vote "permitted, but did not require, United to register in Nevada." (Pl.'s Supp. Br. at 5). Plaintiff appears to represent that United has not yet changed its state of incorporation from Michigan to Nevada.

Defendants' assertion that "Michigan has no interest in the outcome of this case" is simply incorrect. The SPA contains a choice-of-law agreement whereby the parties agreed that Michigan law governs the contract. (SPA section 9.2). Assuming for a moment that the choice-of-law provision would be enforced, it is beyond question that Michigan would have an interest in having a Michigan court apply Michigan law to a contract that was negotiated and partially executed in Michigan, to which a Michigan corporation is a party. Defendants do not otherwise argue the relevance of United's change of residence. Consequently, this fact does not materially alter the section 1404 analysis.

Based on the foregoing, this Court finds that no factors support the transfer of this case to the Northern District of California. Therefore, this Court DENIES Defendants' Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. section 1404(a).

**4)      Should This Court Invoke *Colorado River* Abstention While Defendants and Pulse Systems, LLC Arbitrate Their Dispute In California?**

As an alternative form of relief, Defendants ask this Court to issue a stay this case in deference to the California state court litigation pursuant to *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800 (1976).  Defendants claim that the California state court litigation is parallel to this case and that the *Colorado River* factors weigh heavily in favor of staying this case. (Defs.' Br. at 19-21).

Plaintiff argues that the state and federal proceedings are not parallel because the state court proceeding cannot afford complete relief to Plaintiff, and that the *Colorado River* factors actually weigh heavily in favor of denying a stay.  (Pl.'s Resp. at 18-19).

"In *Colorado River*, the Supreme Court noted that, despite the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).  "The pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Doe v. Ann Arbor Public School*, 2012 WL 1110015 (E.D. Mich. April 3, 2012) (*quoting Colorado River*, 424 U.S. at 817).  There are, however, situations in which a federal court may defer to a parallel concurrent state court proceeding, when the decision to do so is "based on wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*, *citing Colorado River*, 424 U.S. at 817.

"When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and

16

prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Memorial Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 28 (1983). A court should abstain only "in extraordinary and narrow circumstances." *Id.* at 813. Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Crown Equip. Corp. v. Supplies & Servs., Inc.*, 181 F.3d 100 (6th Cir. 1999), *citing Moses H. Cone*, 460 U.S. at 14; *see also Colorado River*, 424 U.S. at 813.

### a)       Are The State Court And Federal Court Proceedings Parallel?

For the first step in determining whether a *Colorado River* stay is appropriate, this Court must find that the concurrent state and federal actions are parallel. *See Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir. 1984). "[E]xact parallelism is not required; [i]t is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (citations omitted).

 Two cases are substantially similar "where (1) the parties are substantially similar, and (2) [Plaintiff's] claims against [Defendants] are predicated on the same allegations as to the same material facts . . . ." *Ann Arbor Public Schools*, 2012 WL 1110015 at *3, *citing Romine* at 340. The parties in both proceedings need not be identical, however. *See Heitmanis*, 899 F.2d at 528. Rather, "[p]arties with 'nearly identical' interests are considered 'substantially the same' for *Colorado River* purposes." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004).

Defendants argue that this federal case is parallel to the California state court case because the parties and the issues involved are substantially similar. (Defs.' Br. at 20). Plaintiff responds that the cases are not substantially similar because they involve different contracts and different bodies of substantive law, thereby assuring that Plaintiff cannot receive complete relief in the California state action. (Pl.'s Resp. at 18-21).

17

This Court finds that the two proceedings are parallel for *Colorado River* purposes. Even though the parties are not identical, both Defendants here are defendants in the California action. Further, while Plaintiff is not *technically* a party to the California litigation, Defendants are correct that United and the California plaintiff, Pulse, have nearly identical interests as United owns Pulse. Most importantly, the claims brought by both United and Pulse, although styled differently, principally involve Defendants' alleged misappropriation of Pulse's trade secrets and Defendants' alleged use of those trade secrets in competing with Pulse. Based on these similarities, the state and federal actions are parallel.

### b)      Application of the *Colorado River* Factors

Having determined that the state and federal proceedings are parallel, this Court must address the *Colorado River* factors and whether they favor abstention in this case. In determining whether to invoke *Colorado River* abstention, a district court must consider such factors as (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Romine*, 160 F.3d at 340-41 (internal citations omitted). The Court should also consider the availability of complete relief in the state court. *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990), *citing Moses H. Cone*, 460 U.S. at 26-27. "These factors do not compose a mechanical checklist . . . they require a careful balancing of the important factors as they apply in a given case." *Crown Equip.*, 181 F.3d at *2, *quoting Moses H. Cone*, 460 U.S. at 1.

Here, the first factor, whether the state court has assumed jurisdiction over property, is irrelevant as no property is at issue in either case.

As to the second factor, it is no surprise that Plaintiff argues that Michigan federal court is a more convenient forum than California state court whereas Defendants argue the opposite. Both are likely true as far as the parties' own interests are concerned. This Court finds that the second factor is neutral and does not weigh in favor of granting or denying a stay.

The fourth and seventh factors concern the order in which jurisdiction was obtained and the relative progress of the proceedings. It appears that the California state court complaint (Doc. #7-4) was filed on July 29, 2013. The complaint in this case was filed on August 19, 2013. Thus, while the California state court did acquire jurisdiction earlier in time than this Court, the difference in time is slight. Additionally, although the California case has been referred to arbitration, it is not clear that much "progress" has been made since then. This Court finds that factors four and seven are neutral, or otherwise do not weigh in favor of granting a stay.

The fifth factor concerns whether federal or state law governs the issues in the cases. Here, it is undisputed that both cases concern solely state law – albeit the laws of two different states. When the state law issues are routine, such as breach of contract, fraud, or conversion, the state issues do not constitute "a 'rare' or exceptional circumstance where a district court should decline jurisdiction." *Focus Radio, Inc. v. Summit Radio, Inc.*, 853 F. Supp. 252, 255 (E.D. Mich. 1994). This Court is more than capable of determining the state law issues in this case. Factor five does not weigh in favor of granting a stay.

The sixth relevant factor looks to whether the state court is capable of adequately protecting a plaintiff's federal rights. Here, Plaintiff is not asserting any federal rights. This factor is

inapposite and neutral to the analysis.

Finally, the seventh factor looks to whether the federal and state court have concurrent jurisdiction. It appears undisputed that they do. This factor weighs in favor of abstention. *See Highland Park, LLC v. Golden*, 20090WL 1704669 at *3 (E.D. Mich. 2009) (Cox, J.), *citing Bates v. Van Buren Township*, 122 Fed. App'x 803, 807 (6th Cir. 2004).

### i.   Factor Three: Avoidance of Piecemeal Litigation

"Avoidance of piecemeal litigation," which is the third *Colorado River* factor, is often the most important factor in the analysis. *See Moses H. Cone*, 460 U.S. at 16. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341.

Plaintiff argues that piecemeal litigation in this situation occurs necessarily because the California parties have been ordered to arbitrate under the Federal Arbitration Act ("FAA"). "The FAA," Plaintiff argues, "requires piecemeal resolution when necessary to give effect to an arbitration agreement." (Pl.'s Resp. at 23, *citing Moses H. Cone*, 460 U.S. at 20). Defendants do not reply to this argument.

This Court finds that there is no risk of piecemeal litigation between these parties. While the factual and legal issues in the California and federal cases may be substantially similar, they are not identical. One involves mainly California trade secret and unfair competition law while this case involves Michigan contract law. The cases involve two entirely different contracts executed at two entirely different times. Thus, it does not appear that the risk of piecemeal litigation is present.

Moreover, the risk of piecemeal litigation cannot be mitigated where, as here, the FAA requires that the California parties arbitrate their dispute. Because Plaintiff here cannot be forced

into arbitration (*see* Section One, *supra*), duplicitous and potentially "piecemeal" litigation cannot be avoided. *Moses H. Cone*, 460 U.S. at 20. This factor does not weigh in favor of granting a stay.

### ii)   Additional Consideration: The Ability of the State Court To Provide Complete Relief

The Sixth Circuit has deemed this factor relevant to the *Colorado River* analysis, although many cases do not address it specifically. *Heitmanis*, 899 F.2d at 528. Indeed, the parties have not briefed their positions on this factor. Nevertheless, this Court has considered this factor as it relates to the present case and finds that it does not weigh in favor of granting a stay because the state court cannot provide *any* relief to the Plaintiff. Plaintiff is not a party to the California state court litigation — at least not in the formal sense. This factor strongly cautions against granting a stay.

After consideration and balancing of all of the *Colorado River* factors, this Court finds that a stay is not warranted. Many of the factors are inapplicable, and most of the remaining factors do not warrant abstention. One or two factors weigh in favor of granting a stay, but not so much so that it overcomes this Court's "virtually unflagging obligation" to exercise its jurisdictional powers. *Romine*, 160 F.3d at 339. Therefore, this Court DENIES Defendants' Motion For A Stay Of Proceedings Pursuant to *Colorado River*.

### CONCLUSION & ORDER

For the reasons set forth above, this Court DENIES Defendants' Motion to Compel Arbitration, Or Transfer Venue, Or Stay Proceedings (Doc. #7) in its entirety.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 12, 2014

21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United American Healthcare Corporation,

     Plaintiff,

v.                                          Case No.: 13-13570

Demian Backs and Vince Barletta,            Honorable Sean F. Cox

     Defendants.

_____/

**PROOF OF SERVICE**

     I hereby certify that a copy of the foregoing document was served upon counsel of record

on February 12, 2014, by electronic and/or ordinary mail.

                                  S/Jennifer McCoy_____
                                  Case Manager